1

2

3

4

5

**LAW OFFICE OF RESHMA KAMATH**
Reshma Kamath, Cal. Bar No. 333800,
700 El Camino Real, Suite 120, #1084,
Menlo Park, California 94025, United States
Ph.: 650 257 0719, E.: reshmakamath2021@gmail.com
*In Propria Persona*

6

7

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RESHMA KAMATH,

　　　　　　Plaintiff,

vs.

COINBASE INC.; WELLS FARGO
BANK, N.A.; AND DOES 1-10,
INCLUSIVE,

　　　　　　Defendants

**CASE NO.: 3:23-cv-3533**

1. **BREACH OF FIDUCIARY DUTY;**
2. **INTENTIONAL MISREPRESENTATION;**
3. **NEGLIGENT MISREPRESENTATION;**
4. **NEGLIGENCE**
5. **BREACH OF CONTRACT**

**DEMAND FOR JURY TRIAL**

　　　*TO THE HONORABLE COURT, ALL PARTIES, AND ALL ATTORNEYS OF RECORD, HEREIN:*

1.

# COMPLAINT

## INTRODUCTION

1. This is an action of negligence and misrepresentation, *inter alia*, against the Defendants Coinbase, Inc., and Wells Fargo Bank, N.A..

## PARTIES

2. Reshma Kamath is a natural person who was residing in Yuma, Arizona from 2020-March 2023 when the alleged incident occurred.

3. Coinbase Inc. is a crypto trading platform that can be accessed in California via website, and mobile application. The principal place of business 430 CALIFORNIA STREET, SAN FRANCISCO, CA 94104; and the mailing address 248 3RD STREET, #434 OAKLAND,CA 92607.

4. Wells Fargo Bank, National Association is a financial institution with its principal place of business in 101 N. PHILLIPS AVENUE, SIOUX FALLS, SD 57104; and mailing address 150 E. 42ND STREET NEW YORK, NY 10017; and, having locations in Arizona, California, and around the United States.

5. Plaintiff is informed and believes and thereon alleges that at all times mentioned herein, Defendants, and each of them, were the agents, employers, and associates lg of each other, and acting with the express and/or implied permission, authority and knowledge of each other, and at all times herein mentioned were acting within the course and scope of said employment or agency with the knowledge and permission of each and all Defendants.

2.

6. Plaintiff alleges, on the basis of information and belief, that the damages, if any, sustained by Plaintiff as alleged in the Complaint on file herein were proximately caused, in whole or part, by the negligence, and/or fault of Defendants, and each of them.

## VENUE & JURISDICTION

7. This Court has jurisdiction over Plaintiff's federal claim under 28 U.S.C. §§ 1331 and 1343.  The Court has supplemental jurisdiction over Plaintiff's claims, which are based on state law, under 28 U.S.C. § 1367.

8. Venue in the United States District Court for the United States District Court Northern District of California San Francisco Division is proper pursuant to 28 U.S.C. § 1391.

9. Plaintiff alleges that all of the Defendants acted under color of state law and violated Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution.

10. Plaintiff also brings state law claims for relief pursuant to this Court's supplemental jurisdiction.

## FACTUAL ALLEGATIONS

11. In the latter part of 2021, a person named "Darryl Lemar Shephard" contacted Plaintiff claiming to be a client.

12. Plaintiff did not believe the person was a prospective client, however, engaged in communication telephonically and via e-mail to ascertain the truth.

3.

1

2

3

13.Plaintiff is an attorney.

14.Plaintiff is licensed to practice in the State of California.

15.Plaintiff regularly engages in communication telephonically and via e-mail with

    any and all prospective clients.

16.Because Plaintiff had some qualms about this alleged prospective client, Plaintiff

    had informed the alleged prospective client that until the retainer agreement was

    signed and payment was made, no work would start. This is standard practice for

    Plaintiff's work.

17.Over the course of a year, Plaintiff received e-mails and calls from this person

    about his sugar refining work in Texas, Virginia, and San Diego, California.

18.Because Plaintiff had some qualms about this alleged client, Plaintiff requested

    an ID from this person to verify his identity.

19.The person immediately provided a driver's license [with picture ID] via e-mail.

20.Plaintiff felt this was conduct that made the person more likely to be genuine,

    because Plaintiff has some strange clients who turn out to be paying and genuine

    clients. This person sounded like no other, and the driver's license with picture

    ID made Plaintiff believe that this was a proper and valid client.

21.This person had stated that he will provide a check – (one check of over $900,000

    turned out to be a scam) and after the deposit is made into the IOLTA of Plaintiff,

    then Plaintiff was to withdraw her attorneys' fees and send the balance payment

4 5 6 7 8 9 10 11 12 13 14 15 16 17 18 19 20 21 22 23 24 25 26 27 28

4.

to a third-party that the client was engaging in a business dealing with. Nothing in this sounded extraordinary.

22. However, this client, because of the fraudulent check, caused the IOLTA to be closed permanently.

23. Plaintiff believed it was the Summit bank that was responsible.

24. This person informed Plaintiff that he will provide another check – genuine in the amount of $48,000.

25. Because Plaintiff had some qualms about this alleged client based on the prior check of $900,000, Plaintiff requested the second check of $48,000 to be deposited directly into her Wells Fargo bank account. (Plaintiff's IOLTA account was closed).

26. This person (and/or his agent) deposited the $48,000 at a Wells Fargo receiving institution.

27. Plaintiff saw a $48,000 positive incoming amount and was ecstatic that this was a real client.

28. Wells Fargo Bank, N.A., did not stop the person (and/or his agent) from depositing the $48,000 at a Wells Fargo receiving institution.

29. Wells Fargo Bank, N.A., did not do an ID check of the person (and/or his agent) while depositing the $48,000 at a Wells Fargo receiving institution.

30. Wells Fargo Bank, N.A., issued a deposit receipt to the person (and/or his agent) while depositing the $48,000 at a Wells Fargo receiving institution.

31. Wells Fargo Bank, N.A., showed a positive "green" balance of $48,000 while depositing the $48,000 at Plaintiff's prior Wells Fargo account. (now closed). There was **no hold** of the $48,000 sum.

32. Based on Wells Fargo's green display of the $48,000 sum in the Wells Fargo Bank, N.A. account, Plaintiff believed this $48,000 check to be real, and the client to be genuine and real.

33. Thus, based on the client's instructions, Plaintiff followed the instructions to transfer the equivalent of that $48,000 to the client's third-party via bitcoin transaction.

34. Plaintiff had/has a Coinbase account since 2015-2016, and on-going.

35. Plaintiff made the crypto transaction based on Wells Fargo Bank, N.A.'s positive green hold on her bank account with no hold of the $48,000.

36. The crypto transaction was put on a 72-hour hold for security purposes by Coinbase.

37. Then, Wells Fargo Bank, N.A., stated the check was a "fraud" from the client.

38. Plaintiff called the lawyer whose name was listed on the check, and that lawyer confirmed it was a fraud.

39. That alleged client later turned out to be a scammer and con artist.

40. Immediately, Plaintiff called Coinbase to inform them of this fraud. Coinbase agents made Plaintiff call over a dozen times. This was during the 72-hour period where the crypto was not transferred.

41. Immediately, Plaintiff called Wells Fargo Bank customer service and fraud unit to inform them of this fraud. The bank stated they can give her a credit of $48,000; and another customer service representative stated they will engage with Coinbase about this. Yet, one more customer service representative stated the crypto in Coinbase will not be harmed, because Wells Fargo will reverse the transaction.

42. Then, Wells Fargo put Plaintiff's account on a security freeze where $10,000 was the balance, and for about two-three weeks did not let Plaintiff access her funds. Finally, they sent a check right before Plaintiff was moving to a new location. This lack of access to her money caused Plaintiff harm and damage.

43. Coinbase, on the other hand, did not assist Plaintiff at all. They gave false attestations to Plaintiff during the phone-calls; often the phone-calls dropped in the middle of dispute reporting; there was no e-mail from the fraud and security team at Coinbase; the customer service insisted that everything must be via the security e-mail and Plaintiff sent documentation several times via that e-mail; and, during the 72-hours, Coinbase did not stop and block the fraudulent transfer, *inter alia*.

44. Because of this, Plaintiff lost over a million dollars of crypto – the value of that day's trading was over $50,000.

45. Plaintiff is well-versed in crypto, and has written several research papers on this topic. Plaintiff understands that crypto transactions are immediate; and, there is

7.

no way to retrieve them. However, Coinbase put a false and misrepresenting 72-hour hold on its portal and mobile application after a crypto transfer was made from Plaintiff's wallet to the alleged fraudster. This made Plaintiff believe that during the 72-hour hold no crypto transfers and transactions would be initiated out-going. However, this was not true, because even when Plaintiff repeatedly informed Coinbase of the fraudulent check and scammer, Coinbase took no action to prevent this.

46. Coinbase only made Plaintiff reset her password more than once, and stated whether Plaintiff had authorized the transaction.

47. Thereafter, Coinbase – purporting to have a fraud and security team - took no action.

48. Coinbase is not a bitcoin wallet – it is a representation and promise to pay the crypto to third-parties, and to individuals.

49. Plaintiff has e-mails, documentation, phone-calls, and phone-logs of all the above-stated allegations.

50. In a separate incident, Wells Fargo Bank, N.A., in Yuma Arizona did not allow Plaintiff to send her escrow monies to her title company on the due-date. The manager refused to provide the consent for her banking person to release Plaintiff's monies. This was a display of racial and ethnic discrimination towards Indian-Americans. The manager had no basis to refuse such service, and

thereafter, the manager spoke very loudly to Plaintiff in front of other patrons about personal and sensitive issues pertaining to Plaintiff's bank account.

51. Because of Defendant Wells Fargo Bank, N.A.'s negligence, Plaintiff was to lose her condominium based on the manager at Yuma, AZ's obstinance that she would not authorize the wire transfer. The manager at Yuma, AZ was also raising personal issues about plaintiff's bank account openly in front of other patrons. Those issues included a 'fraud check.' This caused embarrassment, and humiliation to plaintiff, because that was a prospective client's retainer check – not that of plaintiff. It also causes stress because the deadline for close of escrow was 6 p.m. MST that day. The plaintiff had to anxiously wait for an entire night and half a day for another district manager to sign off and approve the wire. The other manager only appeared there because plaintiff had requested this the prior day and made efforts to speak with that district manager telephonically to ensure that he review the account and authorize.

52. Based on this, Plaintiff was to lose the purchase of her home.

53. Plaintiff requested the senior manager, Randy Chavez, to release the monies to the escrow; and requested a telephone-call be made.

54. Then, that senior manager agreed. The next day he timely released the escrow monies to Plaintiff's escrow.

///

///

9.

**CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**

**BREACH OF FIDUCIARY DUTY**

55. Plaintiff hereby incorporates the preceding allegations as if fully rewritten herein.

56. Defendants had a fiduciary duty, both contractually and statutorily, towards Plaintiff.

57. Plaintiff incurred actual and proximate damages.

58. As a result of defendants' breach of fiduciary duty, defendants' conduct, individually, jointly and collectively, caused actual and proximate damages to Plaintiff.

59. The damages were monetary and non-monetary.

60. In 2022, because of Defendants' breach of fiduciary duty, Plaintiff was deprived of at least her bitcoin and Ethereum on Coinbase, Inc. that was stored on Coinbase, Inc. mobile application from at least 2015-2016

61. Plaintiff seeks damages in the prayer for relief.

**SECOND CLAIM FOR RELIEF**

**INTENTIONAL MISREPRESENTATION**

62. Plaintiff hereby incorporates the preceding allegations as if fully rewritten herein.

63. Plaintiff was harmed because Coinbase, Inc. intentionally misrepresented a fact that was false.

64. Coinbase, Inc. intentionally misrepresented the 72-hour hold period; and the security check.

65. That Coinbase, Inc., misrepresented to Plaintiff, knowing that the fact was false.

66. Coinbase, Inc.'s intentional representation was false; and, made the representation recklessly and without regard for its truth.

67. That Coinbase, Inc. intended that the plaintiff to detrimentally and reasonably rely on this misrepresentation; Plaintiff detrimentally and reasonably relied on the intentional misrepresentation, and called Coinbase, Inc. over a dozen times to complain and notify them about the fraudulent transfer from the scammer.

68. That plaintiff reasonably relied on Coinbase, Inc.'s representation.

69. That plaintiff was harmed of bitcoin and Ethereum in 2022; and

70. Wells Fargo intentionally misrepresented that Coinbase would reverse the transaction and none of Plaintiff's crypto would be harmed based on the reversal; and that, Wells Fargo was talking to Coinbase, Inc..

71. That Wells Fargo misrepresented to Plaintiff, knowing that the fact was false.

72. That Wells Fargo's intentional representation was false; and, made the representation recklessly and without regard for its truth.

73. That Wells Fargo intended that the plaintiff to detrimentally and reasonably rely on this misrepresentation; Plaintiff detrimentally and reasonably relied on the intentional misrepresentation, and called Wells Fargo's repeatedly to complain and notify them about the fraudulent transfer from the scammer.

11.

74. That plaintiff reasonably relied on Wells Fargo's representation.

75. That plaintiff was harmed of bitcoin and Ethereum in 2022; and,

76. That plaintiff's reliance on defendants' representation was a substantial factor in causing plaintiff's harm.

77. Plaintiff seeks damages in the prayer for relief.

## THIRD CLAIM FOR RELIEF

### NEGLIGENT MISREPRESENTATION

78. Plaintiff hereby incorporates the preceding allegations as if fully rewritten herein.

79. Plaintiff was harmed because the defendants negligently misrepresented a fact.

80. Coinbase, Inc. negligently misrepresented the 72-hour hold period; and the security check.

81. That Coinbase, Inc. represented to plaintiff that a fact was true;

82. Coinbase, Inc.'s representation was not true.

83. That Coinbase, Inc. may have honestly believed that the representation was true Coinbase, Inc. had no reasonable grounds for believing the representation was true when Coinbase, Inc. made it; That Coinbase, Inc. intended that the plaintiff to detrimentally rely on this representation; Plaintiff detrimentally relief on the negligent misrepresentation, and called Coinbase, Inc. over a dozen times.

84. That plaintiff reasonably relied on Coinbase, Inc.'s negligent representation.

85. That plaintiff was harmed of bitcoin and Ethereum in 2022; and,

12.

86. Wells Fargo negligently misrepresented that Coinbase would reverse the transaction and none of Plaintiff's crypto would be harmed based on the reversal; and that, Wells Fargo was talking to Coinbase, Inc..

87. That Wells Fargo misrepresented to Plaintiff, knowing that the fact was not true.

88. That Wells Fargo's negligent representation was not true; and, made the representation recklessly and without regard for its truth.

89. That Wells Fargo intended that the plaintiff to detrimentally and reasonably rely on this misrepresentation; Plaintiff detrimentally and reasonably relied on the negligent misrepresentation, and called Wells Fargo's repeatedly to complain and notify them about the fraudulent transfer from the scammer.

90. That plaintiff reasonably relied on Wells Fargo's negligent representation.

91. That plaintiff was harmed of bitcoin and Ethereum in 2022; and,

92. That plaintiff's reliance on defendants' representation was a substantial factor in causing plaintiff's harm.

93. Plaintiff seeks damages in the prayer for relief.

### FOURTH CLAIM FOR RELIEF

#### NEGLIGENCE

94. Plaintiff hereby incorporates the preceding allegations as if fully rewritten herein.

95. Defendants had a duty, both contractual and statutory, toward Plaintiff.

96. Defendants violated banking laws, state and federal, designed to protect consumers such as Plaintiff. Defendants thus engaged in negligence per se.

97. *But for* the defendants' breach of duty, Plaintiff would not have incurred actual and proximate damages.

98. As a result of defendants' breach of duty, *res ipsa loquitor*, defendants' conduct, individually, jointly, and collectively, caused actual and proximate damages to plaintiff.

99. The damages were monetary and non-monetary.

100.   In 2022, because of Defendants' breach of duty, Plaintiff was deprived of at least her bitcoin and Ethereum on Coinbase, Inc. that was stored on Coinbase, Inc. mobile application from at least 2015-2016.

101.   Because of Defendant Wells Fargo Bank, N.A.'s negligence, Plaintiff was to lose her condominium based on the manager at Yuma, AZ's obstinance that she would not authorize the wire transfer. The manager at Yuma, AZ was also raising personal issues about plaintiff's bank account openly in front of other patrons. Those issues included a 'fraud check.' This caused embarrassment, and humiliation to plaintiff, because that was a prospective client's retainer check – not that of plaintiff. It also causes stress because the deadline for close of escrow was 6 p.m. MST that day. The plaintiff had to anxiously wait for an entire night and half a day for another district manager to sign off and approve the wire. The other manager only appeared there because plaintiff had requested this the prior day and made efforts to speak with that district manager telephonically to ensure that he review the account and authorize.

102.    Plaintiff seeks damages in the prayer for relief.

## FIFTH CLAIM FOR RELIEF

## BREACH OF CONTRACT

103.    Plaintiff hereby incorporates the preceding allegations as if fully rewritten

herein.

104.    Defendants had a contract with the consumer, i.e., Plaintiff.

105.    Defendants breached that contract materially and substantially.

106.    Defendants' breach of the contract caused harm to the Plaintiff monetarily,

and non-monetarily.

107.    Plaintiff incurred actual and proximate damages because of Defendants'

breach of contract.

108.    Plaintiff seeks damages in the prayer for relief.

## PRAYER FOR RELIEF

a. A judgment in favor of Plaintiff for $30.50 million in damages inclusive

of repairs to the damages to the car from tow-away and related;

b. Actual, general, special and punitive damages in an amount to be

determined at trial;

c. A judgment for compensatory and expectancy damages in an amount to be

determined at trial, plus reasonable attorneys' fees, against all Defendants;

d. A judgment for compensatory and punitive damages in an amount to be

determined at trial;

e.  A jury trial on all appropriate issues;

f.  An award of costs and expenses against the Defendants; and,

g.  Any and all other relief this Court may deem appropriate.

///

**DATED: July 16, 2023**          **LAW OFFICE OF RESHMA KAMATH**

*/S/ Reshma Kamath*

Reshma Kamath,
*In Propria Persona*

16.