**RESHMA KAMATH**
Mailing Address:
700 El Camino Real, Suite 120, #1084
Menlo Park, California 94025, United States
Ph.: 650 257 0719, E.: reshmakamath2021@gmail.com
Plaintiff, *In Propria Persona*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| RESHMA KAMATH,<br><br>Plaintiff,<br><br>v.<br><br>COINBASE, INC.; WELLS FARGO BANK, N.A.; AND DOES 1-10, INCLUSIVE,<br><br>Defendants. | **Case No.: 3:23-cv-03533-CRB**<br><br>[*For Senior District Judge Charles R. Breyer*]<br><br>**OPPOSITION**<br><br>Date:       February 15, 2024 (vacated)<br>Time:       01:30 P.M. Pacific Time<br>Courtroom: San Francisco Courthouse, Courtroom 6 – 17th Floor 450 Golden Gate Avenue, San Francisco, CA 94102<br><br>Complaint Filed:  July 16, 2023<br>Trial Date:     *Not Set Yet* |

OPPOSITION

# OPPOSITION

# INTRODUCTION

Plaintiff Reshma Kamath submits the Opposition timely [ECF Dkt. No. 27] per Court Order dated January 18, 2024 [ECF Dkt. No. 25,] and objects to the Defendant Coinbase, Inc.'s Motion to Compel Arbitration, [ECF Dkt. No. 18,] because Defendant Coinbase, Inc.'s User Update dated January 2022 **failed to provide reasonable inquiry notice** akin to a **"sign-in wrap" or "browsewrap ."** Further, Defendant Coinbase, Inc.'s User Update **failed to clearly and conspicuously display** the User Update with an arbitration clause on its mobile application and webpage prior to and/or after log-in. Finally, Defendant Coinbase, Inc.'s User Update dated January 2022 **failed to provide informed written consent** from Plaintiff Reshma Kamath about any intent to arbitrate. There was **no delegation** of arbitration authority **prior to** initiating this lawsuit. Therefore, under the Federal Arbitration Act, or "FAA," Defendant Coinbase, Inc.'s User Up date dated January 2022 **failed to meet the enforceability test** of a valid arbitration agreement.

The Court must take heed that "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of America v. Warrior & Gulf Nav. Co.,* 363 U.S. 574, 582 (1960.)

Accordingly, a court must determine that a valid arbitration agreement exists before referring a dispute to an arbitrator. *Henry Schein*, 139 S.Ct. at 530. Courts "should apply ordinary state-law principles that govern the formation of

contracts" to determine whether a valid arbitration agreement exists. *First Options of Chicago , Inc. v. Kaplan* , 514 U.S. 938 , 944 (1995 ). Thus , general contract defenses , such as fraud , duress , or unconscionability , can invalidate arbitration agreements. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011.)

Thus, based on the precedent for sign-wraps and browse-wraps set in the Ninth Circuit and that of its sister circuit jurisdictions, this Court must rule in favor of Plaintiff Reshma Kamath, and ***deny*** Defendant Coinbase, Inc's motion to compel arbitration.

## LAW

### *Unconscionability*

"Unconscionability refers to 'an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.' " *Ingle v. Cir. City Stores, Inc.,* 328 F.3d 1165, 1170 (9th Cir. 2003) (quoting *A & M Produce Co. v. FMC* Corp., 135 Cal.App.3d 473, 486 (Cal. Ct.App. 1982)). "Because unconscionability is a generally applicable defense to contracts , California courts may refuse to enforce an unconscionable arbitration agreement." *Id.; Kinney v. United Health Care Servs., Inc.,*70 Cal.App.4th 1322, 1328-29 (1999). The party seeking to establish an unconscionability defense must do so by a preponderance of the evidence . *Peng v. First Republic Bank*, 219 Cal. App.4th 1462, 1468 (2013), as modified (Oct. 2, 2013); *Serafin v. Balco Properties Ltd., LLC*, 235 Cal.App.4th 165, 173 (2015.)

1

***Browsewrap or SignWrap Agreements***

2

3

"A 'browsewrap' agreement is one in which an internet user accepts a website's

4

terms of use merely by browsing the site. A 'clickwrap' agreement is one in which an

5

internet user accepts a website's terms of use by clicking an 'I agree' or 'I accept'

6

button, with a link to the agreement readily available." *Sellers v. JustAnswer LLC*, 73

7

8

*Cal.App*. 5th 444, 463 (2021), reh'g denied (Jan. 18, 2022), review denied (Apr. 13,

9

2022) (emphasis in original.)

10

***Authentication of writing***

11

12

"Authentication of a writing means (a) the introduction of evidence sufficient

13

to sustain a finding that it is the writing that the proponent of the evidence claims it

14

is or (b) the establishment of such facts by any other means provided by law." *Ruiz*

15

16

*v. Moss Bros. Auto Grp.,* 232 Cal.App.4th 836, 843 (2014). A defendant may meet

17

its "initial burden to show an agreement to arbitrate by attaching to their petition a

18

copy of the purported arbitration agreement purportedly bearing [Plaintiff's]

19

electronic signature. Once [Plaintiff] challenge[s] the validity of that signature in his

20

21

opposition, defendants [are] then required to establish by a preponderance of the

22

evidence that the signature [is] authentic." *Espejo v. S. California Permanente Med.*

23

24

*Grp.,* 246 Cal.App.4th 1047, 1060 (2016). "The act of the person may be shown in

25

any manner, including a showing of the efficacy of any security procedure applied to

26

27

determine the person to which the electronic record or electronic signature was

28

attributable." Cal. *Civ. Code* § 1633.9(a). The "burden of authenticating an electronic signature is not great." *Ruiz*, 232 Cal.App.4th at 844.

*Arbitration*

"[B]efore compelling arbitration pursuant to the Federal Arbitration Act, a court must determine that (1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of that agreement." *Kirleis v. Dickie, McCamey & Chilcote, P.C.,* 560 F.3d 156, 160 (3d Cir. 2009). The first step in this process is critical because "[b]efore a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect." *McCoy v. Pan Am. Grp.,* No. 21-389, 2022 WL 1136953, at *1 (W.D. Pa. Apr. 18, 2022) (Wiegand, J.) (cleaned up).

*In this instant case*, the Court must decide the distinction between accepting the scroll-down "User Update" dated January 2022, and signing "an User Agreement" with an arbitration clause (the latter which did not occur.)

## FACTUAL ALLEGATIONS

In January 2022, Defendant Coinbase, Inc. did **not** have an User Update or an User Agreement on its Plaintiff's webpage or mobile application clearly and conspicuously displayed.

In January 2022, Defendant Coinbase, Inc. did **not** collect any updated personal information of Plaintiff Reshma Kamath.

In January 2022, Defendant Coinbase, Inc. did **not** e-mail any user agreement or any user update to Plaintiff Reshma Kamath as DocuSign usually does.

On March 02, and 03, 2022, a scammer posing to be a client drained Plaintiff Reshma Kamath's Coinbase account growing from the year 2017 to 1/4 its value. Plaintiff Reshma Kamath had filed a Federal Bureau of Investigations ( FBI) and an Internet Complaint (IC) about this scammer.

On March 02, and 03, 2022, Coinbase, Inc. had a three-day waiting period on its log-in page telling consumers that prior to the consumer transactions of crypto and digital currency the consumers would have to wait for three days.

Usually, transactions of crypto and digital currency are instant. (Plaintiff Reshma Kamath has written about crypto and knows that **Coinbase, Inc. is not a crypto digital wallet – Coinbase, Inc. is a representation of a promise to hold crypto.**)

That is why Plaintiff Reshma Kamath informs the Court that **Defendant Coinbase, Inc. doesn't work with alpha-numeric string addresses, e.g., 06 afhkfiryroNjS 11919 NAL – Defendant Coinbase, Inc. works with a controlled environment of a mobile application that Defendant Coinbase, Inc. has authority over in delaying its transactions.**

Plaintiff Reshma Kamath vehemently called Coinbase, Inc. informing them that a scam had occurred and to pause the transaction.

Defendant Coinbase, Inc. stated the transaction was NOT sent, because of the 3-day (72-hour) waiting period. Plaintiff Reshma Kamath was happy that there was some hope the transaction would be blocked.

Defendant Coinbase, Inc., however, instead of helping Plaintiff Reshma Kamath, locked her Coinbase account – the same account from the year 2017 to March 02, 2022. Then, Defendant Coinbase, Inc. made Plaintiff Reshma Kamath go through hoops to unlock her Coinbase account. However, that is not what Plaintiff Reshma Kamath had asked help with.

Defendant Coinbase, Inc. made Plaintiff Reshma Kamath go through over ***three dozen*** customer representatives – who'd always say e-mail the documents to support.

Plaintiff Reshma Kamath had already done that – but continued to e-mail support and call Defendant Coinbase, Inc.'s telephonic customer service. Defendant Coinbase, Inc.'s customer service reps were extremely unprofessional – they'd drop calls in the middle of the conversation, a rooster was hooting in the background, and they demonstrated complete mismanagement.

The entire three-day waiting period Defendant Coinbase, Inc. didn't do anything to help Plaintiff Reshma Kamath.

The fourth-day waiting period Defendant Coinbase, Inc. sent the crypto to the scammer.

Plaintiff Reshma Kamath was a victim who overnight had her Coinbase account dissipated of at least over $100,000 of crypto and digital currency not including the appreciation value.

Even to this day, Defendant Coinbase, Inc. is non-co-operative in providing communication logs of phone-calls, e-mails and related information from March 2 and March 3, 2022. Plaintiff Reshma Kamath was to formally subpoena this – and Defendant Coinbase, Inc. misled that it would stipulate to providing that.

After months of red-lining with Plaintiff Reshma Kamath, defendant Coinbase, Inc.'s attorney filed the motion to compel arbitration. As Defendant could file their responsive pleading, Plaintiff Reshma Kamath will then move via Opposition.

## **ARGUMENT**

### I. **PLAINTIFF RESHMA KAMATH HAS MET HER BURDEN TO PROVE DEFENDANT COINBASE, INC.'S USER UPDATE IS A BROWSEWRAP**

Plaintiff Reshma Kamath has met her burden in proving that Defendant Coinbase, Inc.'s user agreement is a "browsewrap." Defendant Coinbase, Inc.'s user update from January 2022 is a "browsewrap."

In its Motion to Compel, Defendants have produced three exhibits. Each of them has no merit.

Plaintiff Reshma Kamath contends that Defendant Coinbase, Inc. has produced favorable evidence to Plaintiff Reshma Kamath in Motion to Compel -

Exhibit 3 regarding the layout of the pre–2022 registration page and the placement of the link to the 'User Update' contained on that page.

Defendant Coinbase Inc.'s Motion to Compel - Exhibit 3 shows a declaration of Defendant Coinbase, Inc.'s tech staff with an article attached.

Defendant Coinbase Inc.'s Motion to Compel Exhibit 3-Exhibit B, there seems to be a screen-shot of what Defendant has entitled ***"user agreement" not even in its entirety with fine print and a scroll-down menu bar/tab.***

This demonstrates a high degree of procedural unconscionability. Nowhere on that screenshot is an arbitration clause. Defendant Coinbase Inc.'s Motion to Compel Exhibit 3-Exhibit C, Defendant has Plaintiff Reshma Kamath's name ***without a signature*** stating 'accepted user agreement.' ***Not even a "/S/" appears***. Nowhere does it state that Plaintiff Reshma Kamath actually signed the alleged user agreement, because Plaintiff Reshma Kamath did ***not sign electronically or physically*** the alleged User Update.

The scroll-down menu bar that Defendant Coinbase, Inc. has provided in Exhibit 3 of the Motion to Compel is in a browse-wrap form.

Courts have repeatedly found that browse-wrap agreements are unconscionable.

Defendant Coinbase, Inc. has a tech support declaration – whose expertise credentials are unknown and not defined in the declaration. That tech admin has

provided a scroll-down menu as an 'User Update' dated January 2022 – not even the entire agreement – if any existed in January 2022.

This case implicates the law of Internet-based contract formation. As the Ninth Circuit has explained, "[c]ontracts formed on the Internet come primarily in two flavors: 'clickwrap' (or 'click-through') agreements, in which website users are required to click on an 'I agree' box after being presented with a list of terms and conditions of use; and 'browsewrap' agreements, where a website's terms and conditions of use are generally posted on the website via a hyperlink at the bottom of the screen." *Nguyen v. Barnes & Noble Inc.,* 763 F.3d 1171, 1175-76 (9th Cir. 2014). "

"Unlike a clickwrap agreement, a browsewrap agreement does not require the user to manifest assent to the terms and conditions expressly . . . [a] party instead gives his assent simply by using the website." *Id.* (internal quotation marks omitted). "Indeed, 'in a pure-form browsewrap agreement, the website will contain a notice that—by merely using the services of, obtaining information from, or initiating applications within the website—the user is agreeing to and is bound by the site's terms of service.'" *Id.*. (quoting *Fteja v. Facebook, Inc.,* 841 F. Supp. 2d 829, 837 (S.D.N.Y. 2012)). "Thus, 'by visiting the website—something that the user has already done— the user agrees to the Terms of Use not listed on the site itself but available only by clicking a hyperlink.'" *Id.*. Courts have held that the "validity of [a] browsewrap

contract depends on whether the user has actual or constructive knowledge of a website's terms and conditions." *Id.*.

Defendant Coinbase, Inc. expects that an "user update" provides constructive knowledge of an "arbitration clause." However, that is *not* the case in Motion to Compel Exhibit 3.

Defendant Coinbase, Inc.'s user update and the scroll-down user agreement is browsewrap that embeds the terms and conditions in the visitation of Coinbase's account log-in via mobile application.

Browsewraps do not require the user to take any affirmative action to assent to the website terms. In some situations, *a user may not even know a website has a user agreement.*

*Never has Plaintiff Reshma Kamath signed such an "User Update" in January 2022*. *Plaintiff Reshma Kamath did not manifest any signature proactively.*

Defendant Coinbase, Inc. provided a typed-up document with a DocuSign label. Defendant Coinbase, Inc.'s typed-up document in Motion to Compel Exhibit 3-Exhibit C *without a "/s/"* and *without any cursive stylistic signature* of Plaintiff Reshma Kamath that Plaintiff Reshma Kamath always picks while signing electronically demonstrates that Plaintiff Reshma Kamath had *not signed* this "User Update" from January 2022.

In January 2022, Defendant Coinbase, Inc. did **not** have an User Update or an User Agreement on its Plaintiff's webpage or mobile application clearly and conspicuously displayed.

In January 2022, Defendant Coinbase, Inc. did **not** collect any updated personal information of Plaintiff Reshma Kamath.

In January 2022, Defendant Coinbase, Inc. did **not** e-mail any user agreement or any user update to Plaintiff Reshma Kamath as DocuSign usually does.

There was **no accept button prefacing an arbitration clause** contained in an user update of January 2022. *Assuming arguendo* there was an "accept" button, Plaintiff Reshma Kamath would have had no other choice but to click the accept to check her crypto account status.

Thus, the Court must ***deny*** Defendant Coinbase, Inc.'s motion to compel.

## II.  PLAINTIFF HAS MET HER BURDEN TO PROVE DEFENDANT COINBASE, INC.'S USER UPDATE IS A SIGN-IN WRAP

Plaintiff Reshma Kamath has met her burden in proving that Defendant Coinbase, Inc.'s User Update dated January 2022 is a "sign-in wrap.". Defendant Coinbase, Inc.'s User Update dated January 2022 is a "sign-in wrap."

A questionable form of internet contracting has been used in recent years—sign-in-wraps. These internet consumer contracts do not require the user to click on a box showing acceptance of the "terms of use" in order to continue. Rather, the website is designed so that a user is notified of the existence and applicability of the

site's "terms of use" when proceeding through the website's sign-in or login process. Courts of Appeals have yet to rule on the validity and enforceability of the terms of such contracts.

Sign-in wrap agreements do include a textual notice indicating the user will be bound by the terms, but they **do not require the consumer** to review those terms or to expressly manifest their assent to those terms by checking a box or clicking an "I agree" button. (See, e.g., *Colgate v. JUUL Labs, Inc.* (N.D.Cal. 2019) 402 F.Supp.3d 728, 764–766 (*Juul Labs, Inc. case*); *Cullinane v. Uber Technologies, Inc.* (1st Cir. 2018) 893 F.3d 53, 63.

Instead, the consumer is purportedly bound by clicking some other button that they would otherwise need to click to continue with their transaction or their use of the website—most frequently, a button that allows the consumer to "sign in" or "sign up" for an account. Thus, it is not apparent that the consumer is aware that they are agreeing to contractual terms simply by clicking some other button. Instead, "the consumer's assent is 'largely passive,' "and the existence of a contract turns" 'on whether a reasonably prudent offeree would be on inquiry notice of the terms at issue.'"

In *Colgate v. Juul Labs, Inc.* (N.D. Cal. 2019) 402 F. Supp. 3d 728, the Court *denied* Juul Labs, Inc.'s motion to compel arbitration based on a sign-in agreement. Similar to the *Juul Labs, Inc.* case, in this case, Coinbase Inc. did not provide inquiry-notice to Plaintiff Reshma Kamath. In *Juul Labs, Inc.* case,

13

1
2
3
4
5

"Plaintiffs attest that they were not on actual notice of the hyperlink to the Terms of Service or the arbitration provision itself, and defendants do not point to evidence from which a jury could infer otherwise. Therefore, the question is whether the Plaintiffs were on inquiry notice of the arbitration provision by virtue of the hyperlink to the Terms of Service on the sign-up page and manifested their assent to the agreement by clicking "sign up." *Id.* at 764.

6
7
8

***Similarly***, in this case, Plaintiff Reshma Kamath was **not** on actual notice of the hyperlink to the Terms of Service or the arbitration provision. Plaintiff Reshma

9
10

Kamath was not put on inquiry notice by virtue of an User Update and an Article as Defendant Coinbase, Inc. contends in the Motion to Compel Exhibit 3.

11
12

Moreover, Defendant Coinbase, Inc. did **not** provide a highlighted,

13
14

underlined, all caps or in a separate box user update or article as to an arbitration provision.

15
16
17
18
19

"Here, JUUL's hyperlink on its Earlier Sign-Up Page was not highlighted, underlined, in all caps, or in a separate box. It would not have served to put a reasonable user of the internet on inquiry notice of the arbitration provision. Plaintiff Masessa, Roberts, Viscomi, and Ahmad lacked inquiry notice." *Colgate v. Juul Labs, Inc.* (N.D. Cal. 2019) 402 F. Supp. 3d 728, 765.

20
21
22

Next, *Cullinane v. Uber Techs., Inc.* (1st Cir. 2018) 893 F.3d 53 (*Uber Techs., Inc.*), the Court denied the Defendant's motion to compel, because:

23
24
25
26
27
28

"Uber's "Terms of Service & Privacy Policy" hyperlink did not have the common appearance of a hyperlink. While not all hyperlinks need to have the same characteristics, they are "commonly blue and underlined." CR Assocs. L.P. v. Sparefoot, Inc., No. 17-10551-LTS, 2018 WL 988056, at *4 n.4 (D. Mass. Feb. 20, 2018); see also e.g., Meyer, 868 F.3d at 78 ("[T]he hyperlinks are in blue and underlined."); Adelson v. Harris, 774 F.3d 803, 808 (2d Cir. 2014) ("[T]he hyperlinks were not hidden but visible in the customary manner, that is, by being embedded in blue, underlined text."); Fteja v.

14

1
2
3
4
5
6
7

Facebook, Inc., 841 F.Supp.2d 829, 835 (S.D.N.Y. 2012) ("The phrase ' Terms of Service' is underlined, an indication that the phrase is a hyperlink, a phrase that is 'usually highlighted or underlined' and 'sends users who click on it directly to a new location—usually an internet address or a p rogram of some sort.' "). Here, the "Terms of Service & Privacy Policy" hyperlink was presented in a gray rectangular box in white bold text. Though not dispositive, the characteristics of the hyperlink raise concerns as to whether a reasonable user would have been aware that the gray rectangular box was actually a hyperlink."

8

Then, the *Uber Techs., Inc*. Court discussed the term "**conspicuous**" in the

9

Uniform Commercial Code – as must this Court do in deciding Coinbase, Inc's "

10

User Update":

11
12
13
14
15
16
17
18
19
20
21

    "Even though the hyperlink did possess some of the characteristics that make a term conspicuous, the presence of other terms on the same screen with a similar or larger size, typeface, and with more noticeable attributes diminished the hyperlink's capability to grab the user's attention. If everything on the screen is written with conspicuous features, then nothing is conspicuous. See Stevenson v. TRW Inc., 987 F.2d 288, 296 (5th Cir. 1993) (interpreting the Uniform Commercial Code's definition of the term "conspicuous" in the context of a disclaimer and stating that a " disclaimer is not conspicuous ... when it is the same size and typeface as the terms around it"); Boeing Airplane Co. v. O'Malley, 329 F.2d  585, 593 (8 th Cir. 1964) (interpreting a state statute that contained a similar definition for the term "conspicuous" as the Massachusetts Uniform Commercial Code and finding that if a term "is merely in the same color and size of other type used for the other provisions," it fails to be a conspicuous term .)"

22
23

Finally, as did the *Uber Techs., Inc*.'s Court, this Court must decide to

24

**deny** Defendant Coinbase, Inc.'s motion to compel arbitration, because Plaintiff

25

Reshma Kamath was not reasonably notified of the terms of any Agreement and

26
27

User Update. Defendant Coinbase, Inc. failed to carry its burden on its motion to

28

compel arbitration.

"Because the Plaintiffs were not reasonably notified of the terms of the Agreement, they did not provide their unambiguous assent to those terms. We therefore find that Uber has failed to carry its burden on its motion to compel arbitration." *Cullinane v. Uber Techs., Inc.* (1st Cir. 2018) 893 F.3d 53, 64.

Thus, this Court must *deny* the Defendant Coinbase, Inc.'s motion to compel arbitration. because similar to Plaintiff in *Am's Test Kitchen, L.P.*, Defendant Coinbase, Inc. did *not* get informed written consent from and to Plaintiff Reshma Kamath in a clear and conspicuous manner. See, *Adams v. Am's Test Kitchen, L.P.* (D. Mass., June 30, 2023, Civil Action 22-CV-11309-AK, where the Court *denied Am's Test Kitchen, L.P.'s* motion to compel

**III.   PLAINTIFF RESHMA KAMATH DID NOT SIGN AN "USER UPDATE" AND ALSO DEFENDANT COINBASE, INC. DID NOT REQUEST PLAINTIFF RESHMA KAMATH TO FILL OUT ANY DETAILED APPLICATION IN JANUARY 2022 WITH HER PERSONAL INFORMATION**

Plaintiff Reshma Kamath did not sign Defendant Coinbase, Inc.'s user update or an user agreement in January 2022. ***An user update is not a user agreement***. ***An article*** attached to a user update – that Defendant Coinbase, Inc. submits in Exhibit 3-Exhibit A, is *not* an enforceable agreement under the FAA.

There was *no detailed application* on Coinbase, Inc.'s page. Interestingly, when Plaintiff Reshma Kamath had opened the account, Plaintiff Reshma Kamath resided in Chicago, Illinois. However, in the year 2022, Plaintiff Reshma Kamath resided in Yuma, Arizona. The Defendant Coinbase, Inc. made absolutely no effort to collect any of Plaintiff Reshma Kamath's personal information in January 2022 to

reflect that Plaintiff Reshma Kamath's personal information was updated from Illinois to Arizona on the Coinbase, Inc. account page.

Nevertheless, "the FAA does not require parties to arbitrate when they have not agreed to do so." *Cullinane v. Uber Techs., Inc.*, 893 F.3d 53, 60 (1st Cir. 2018) (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) (internal quotation marks omitted).)

There was ***no Opt-Out button*** on Coinbase, Inc.'s page. Defendant Coinbase, Inc. did not given any option to opt-out of its User Update if it ever provided that to Plaintiff Reshma Kamath. *Nicosia v. Amazon.com, Inc.,* 834 F.3d 220, 237 (2d Cir. 2016) (arbitration clause was not enforceable where disclosure was inconspicuous in the context of the page.)

*Assuming arguendo*, the Court believes any fallacious argument of Defendant Coinbase, Inc. *re* conspicuousness, the Ninth Circuit in *Berman v. Freedom Fin. Network, LLC* (N.D. Cal., Sep. 1, 2020, No. 18-cv-01060-YGR) [pp. 3-4] nevertheless has held that the website of *Freedom Fin. Network, LLC* was insufficient to bind the consumer because it contained no admonition to "review terms" or otherwise prompt the user to take affirmative action to demonstrate assent to the terms at issue, including the arbitration clause. *Id.* at 1178-79 ("where a website makes its terms of use available via a conspicuous hyperlink on every page of the website but otherwise provides no notice to users nor prompts them to take

17

any affirmative action to demonstrate assent, even close proximity of the hyperlink

to relevant buttons users must click on—without more—is insufficient to give rise to

constructive notice.") *Id*.; *Uber Techs., Inc., supra*, 63-64 (1st Cir. 2018) (affirming

denial of motion to compel arbitration where "[e]ven though the hyperlink did

possess some of the characteristics that make a term conspicuous, the presence of

other terms on the same screen with a similar or larger size, typeface, and with more

noticeable attributes diminished the hyperlink's capability to grab the user's

attention.")

Thus, in this case, the Court must implement the precedent of all the circuits

and ***deny*** the Defendant Coinbase, Inc.'s motion to compel.

## IV.   DEFENDANT COINBASE, INC. HAS FAILED TO MEET ITS BURDEN VIA A PREPONDERANCE OF EVIDENCE TO AUTHENTICATE SIGNATURE

Defendant Coinbase, Inc. failed to meet its burden in proving by a

preponderance of evidence to authentic signature. "The party moving to compel

arbitration has the burden to prove that an agreement to arbitrate exists by a

**preponderance of the evidence**. *Engalla v. Permanente Medical Group, Inc.,* 15

Cal.4th 951, 972 (1997); *Aggarwal v. Coinbase, Inc*. (N.D. Cal., Aug. 2, 2023, 22-

cv-04829-JSW) [pp. 6]. [**Emphasis Added**.]

Similar to the Ninth Circuit cases, this Court must decide in this case that "the

onus [is] on website owners to put users on notice of the terms to which they wish to

bind consumers." *Nguyen*, 763 F.3d at 1178-79. "Given the breadth of the range of

technological savvy of online purchasers, consumers cannot be expected to ferret out hyperlinks to terms and conditions to which they have no reason to suspect they will be bound." *Id.* at 1179; *Berman v. Freedom Fin. Network, LLC* (N.D. Cal., Sep. 1, 2020, No. 18-cv-01060-YGR) [pp. 4.]

**In this lawsuit**, the Court must scrutinize whether Plaintiff Reshma Kamath was on inquiry notice of an user update embedded with an arbitration clause via Defendant Coinbase, Inc.'s user update. As in *Berman*, the Ninth Circuit found "that defendants have failed to meet their burden to establish assent to the mandatory arbitration agreement in their Terms & Conditions as to plaintiffs Hernandez and Russell. The motion to compel arbitration is **DENIED** on those grounds." *Berman v. Freedom Fin. Network, LLC* (N.D. Cal., Sep. 1, 2020, No. 18-cv-01060-YGR) [pp. 6] where the Ninth Circuit court discussed that the consumer is **not** clearly asked to indicate her agreement to any Terms & Conditions where the buttons state: "This is correct, Continue!" and "Continue" - in spite of text above the buttons stating, "I understand and agree to the Terms & Conditions" and "I understand and agree to the Terms & Conditions which include mandatory arbitration.").

Thus, in this case, the Court must implement the precedent of all the circuits and ***deny*** the Defendant Coinbase, Inc.'s motion to compel.

**V.    DEFENDANT COINBASE, INC.'S "USER UPDATE" IS PROCEDURALLY AND SUBSTANTIVELY UNCONSCIONABLE BECAUSE AN USER UPDATE IS NOT AN ENFORCEABLE AGREEMENT UNDER THE FAA**

Plaintiff Reshma Kamath contends Defendant Coinbase, Inc.'s User Update is not an Agreement under the FAA. Any User Update is one that provides some kind of progress report. A true and correct example of "user update" in technology is attached hereto in **EXHIBIT A**, and incorporated via reference, herein.

Under California law, a contract provision is unenforceable if it was "unconscionable at the time it was made." Cal. *Civ. Code* § 1670.5(a); see also *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002). If there were a delegation clause, it is unconscionable, Plaintiff Reshma Kamath has met her burden to show the delegation clause is procedurally and substantively unconscionable. *Armendariz v. Found. Health Psychare Serv., Inc*., 24 Cal.4th 83, 114-15 (2000); see also *Malone,* 226 Cal.App.4th at 1561. The Court evaluates the presence of procedural and substantive unconscionability on a "sliding scale." *Malone*, 226 Cal.App.4th at 1561. "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz,* 24 Cal.4th at 114. A court must find that a contract is both procedurally and substantively unconscionable before it can exercise its discretion to refuse to enforce a contract. *Id.*.

**In this case**, there is a high degree of procedural and substantive unconscionability in Defendant Coinbase, Inc.'s User Update. *Burzdak v. Universal Screen Arts, Inc.* 21-cv-02148-EMC (N.D. Cal. Aug. 16, 2021); See also *Maree v. Deutsche Lufthansa AG,* No. SACV 20-885-MWF (MRWx), 2021 U.S. Dist. LEXIS

16452, at *8-9 (CD. Cal. Jan. 26, 2021) (holding that Expedia.com's Terms of Use were not "sufficiently noticeable to put a reasonable user on inquiry notice of its provisions" - even though above the "Complete Booking" button, there was the statement: "By selecting to complete this booking I acknowledge that I have read and accept the Rules & Restrictions, Terms of Use . . . and Privacy Policy . . . and Government Travel Advice.")

Hence, Defendant Coinbase, Inc. fail to produce an enforceable agreement to arbitrate under the FAA with Plaintiff's informed written consent to arbitrate. A true and correct example of the redacted IC3 complaint with Coinbase, Inc. delayed send in March 2022 with some non-responsive Coinbase e-mails is in **EXHIBIT B**, and are incorporated via reference, herein.

## VII.   PLAINTIFF RESHMA KAMATH DID NOT "CLEARLY AND UNMISTAKENLY" DELEGATE THRESHOLD ARBITRABILITY QUESTIONS TO THE ARBITER

When a district court finds that a valid arbitration agreement exists, it must then determine whether the parties contracted to delegate threshold arbitrability questions to an arbitrator by "clear and unmistakable evidence." *Henry Schein*, 139 S.Ct. at 530 (quoting *First Options*, 514 U.S. at 944). Upon a finding that the parties clearly and unmistakably contracted to delegate threshold arbitrability questions to an arbitrator, a district court may not rule on arbitrability questions. *Id.*.

No arbitration had or has commenced prior with the AAA.

Because Defendant Coinbase, Inc. was making false attestations that would produce all documents without the need for discovery and subp oena from Plaintiff, Plaintiff Reshma Kamath submitted Defendant Coinbase, Inc.'s User Up date to the American Arbitration Association with a Demand for Arbitration.

In Defendant's Motion to Compel, Exhibit 1 shows Plaintiff Reshma Kamath's efforts to engage in arbitration **concurrently** together with this federal case to ensure alternative dispute resolution is pursued with the afore-stated Plaintiff Reshma Kamath's district case. But Plaintiff did not delegate any authority to any arbiter because of this present case and intent to litigate.

During this time, Defendant Coinbase, Inc. was wasting time pretending they wanted to enter into a stipulation for Plaintiff Reshma Kamath's subpoenaed documents to provide to Plaintiff Reshma Kamath in lieu of a formal subpoena. (not to confuse with Plaintiff's requested extension stipulation,) After weeks of red-lining between parties, and when Plaintiff Reshma Kamath had stated that it would be an internal stipulation, the attorneys of Defendant Coinbase, Inc. reneged and filed the Motion to Compel Arbitration. Defendant Coinbase, Inc. and its attorneys had prior played the same game -as to making Plaintiff Reshma Kamath put in a request for stay – while Defendant Coinbase, Inc. not appearing in the matter.

The Court must thus find that Defendant Coinbase, Inc.'s User Update dated January 2022 was similar to the *Universal Screen Arts, Inc.* case, where,

1    "[a]ccordingly, the Court holds that, in the instant case, USA's
2    pop-up screen did **not put a reasonably prudent website user on**
     **inquiry notice** of the Terms of Use and, therefore, Ms. Burzdak
3    cannot be bound by the Terms of Use which contain the arbitration p
     rovision. The motion to **compel arbitration is therefore denied**."
4    *Burzdak v. Universal Screen Arts, Inc.* (N.D. Cal., Aug. 16, 2021, 21-
5    cv-02148-EMC) [pp. 4.] [**Emphasis Added**.]

6                              <u>CONCLUSION</u>

7
8        Plaintiff Reshma Kamath  requests the Court to ***DENY*** the Defendant

9    Coinbase, Inc.'s Motion to Compel Arbitration based on the foregoing reasons.

10       ///

11
12   **DATED:  January 25, 2024**                **RESHMA KAMATH**

13                                    */S/ Reshma Kamath*

14
15                                    Plaintiff, *In Propria Persona*

16

17

18

19

20

21

22

23

24

25

26

27

28

# **PROOF OF SERVICE**

F.R.C.P. 5 / C.C.P. § 1013(a)(3), C.C.P. § 1010.6(a)(6) / Cal. R. Ct. R. 2.260

I am employed in the County of San Mateo, California. I am over the age of 18, and not a party to this action. My mailing address is: 700 El Camino Real, Suite 120, #1084, Menlo Park, California 94025, and my e-mail address is reshmakamath2021@gmail.com for electronic-service. On January 25, 2024, I served the following document(s) on: SEE ATTACHED SERVICE LIST.

**VIA ELECTRONIC SERVICE**: In electronically transmitting courtesy copies of the document(s) listed above to the email address(es) of the person(s) set forth on the attached service list. To my knowledge, the transmission was reported as complete and without error, as per the electronic service agreement between all parties and their attorneys of record, herein. [NOTICE OF C.C.P. 1010.6, VIA CONSENT BETWEEN APPEARED PARTIES.]

**SERVICE LIST**
ALEXANDRA WHITWORTH
Partner
BRYAN CAVE LEIGHTON PAISNER LLP - San Francisco, CA USA
alex.whitworth@bclplaw.com
T: +1 415 675 3463
MAKAELA O'CONNELL
Associate
makaela.oconnell@bclplaw.com
T: +1 310 576 2152
BRYAN CAVE LEIGHTON PAISNER LLP
120 Broadway, Suite 300, Santa Monica, CA 90401-2386


I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct. Executed on January 25, 2024.

*/S/ Reshma Kamath*
RESHMA KAMATH

# EXHIBIT A

OPPOSITION

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

User Update

Braze
https://www.braze.com › canvas › canvas_components

The User Update component **allows you to update a user's attributes, events, and purchases in a JSON composer**, so there's no need to include sensitive ...
Create a User Update · Advanced JSON composer · Use cases


Update a User | Auth0 Management API v2
Auth0
https://auth0.com › api › users › patch-users-by-id

**Update a user**. These are the attributes that can be updated at the root level: app_metadata; blocked; email; email_verified; family_name; given_name


Method: users.update | Admin console

Google for Developers
https://developers.google.com › ... › Admin console

May 18, 2023 — Updates a user. This method **supports patch semantics**, meaning that you only need to include the fields you wish to update.


Supabase Javascript Client - Update a user

Supabase
https://supabase.com › docs › reference › auth-update...

**Updates user data for a logged in user**. In order to use the updateUser() method, the user needs to be signed in first.


Update a user (REST API method)

OPPOSITION



[IBM](#)
https://www.ibm.com › docs › urbancode-deploy › to...

Update a user. **Specify the user name in the 'user' parameter** and use the JSON string to specify new information about the user.

[Update User by ID - API](#)



[OneLogin Developers](#)
https://developers.onelogin.com › API › 1 › Users

**Set to the id of the user that you want to update**. If you don't know the user's id , use the Get Users API call to return all users and their id values.

[wp_update_user() – Function](#)



[WordPress Developer Resources](#)
https://developer.wordpress.org › reference › functions

**Updates a user in the database**. Description. It is possible to update a user's password by specifying the 'user_pass' value in the $userdata parameter array ...

[Update User - Getting started - Webflow](#)



[Webflow](#)
https://docs.developers.webflow.com › reference › up...

Update User ... An array **of access group** slugs. Access groups are assigned to the user as type admin and the user remains in the group until removed. ... The rate ...

[updateUser() | User Object](#)

27

Clerk
https://clerk.com › docs › references › backend › upd...

Nov 21, 2023 — Updates **a user with a given ID with attribute values** provided in a params object.

OPPOSITION

# EXHIBIT B

OPPOSITION

 **Gmail**

Reshma Kamath <reshmakamath2021@gmail.com>

### IC3 COMPLAINT-DARRYL LEMAR/MOORE
1 message

Sat, Mar 12, 2022 at 9:16 PM

I'm a lawyer in California who practices civil litigation in my second year of practice. This person named Darryl Lemar Shepard pretended to be a client, signed retainer agreement, and then based on my request, sent copy of ID, and selfie with ID. For months, there was talks of some real-estate

the settlement of the property, and that as fees, I get a percentage. All the agreements signed. This person sent a $995K check part of some $9M property deal. He also stated there is some $36M skyscraper deal in Sacramento coming up. This check when deposited was flagged as "altered/fictitious." Before this, I called the issuer, and checked with the bank, there was alleged funds available, but the issuer could not confirm whether one of their clients sent this to me. After it got flagged, this person, Shepard stated it was some mistake, and it was a real check. I informed if so then they must wire or direct deposit a check directly into my account. They did in the amount of $48,500. They sent me an in-bank transaction receipt dated and time-stamped. This got posted for two days. Seeing it posted, and it was a genuine transaction, I was satisfied as the attorney. During this, they requested the money be sent to the partner, William G. Moore via bitcoin. I then had my personal Coinbase account to send them funds to the wallet addresses they provided. The amounts were $5,00; $5,000; $10,000; and $19,5000 adding to $35,000. Seeing the $48,500 was posted in my bank account per their check, I sent this. The check then turned out to be counterfeit and fraud within two days of posting. I called the lawyer, and law firm, on the face of the check, she called back, and stated she had not signed the check, and this kind of scam occurs all the time in real-estate transactions, and underwriting. Based on my request, my bank, Wells Fargo, initiated a stop-payment on all 4 payments to Coinbase. They also started a fraud investigation when I explained above to them. They gave a ach claim refund. However, Coinbase did not. They did not hold/stop/delay the transaction to prevent the fraudsters from getting the money in bitcoin. The fraudsters, got the money. Coinbase has eaten about $25,500 of my Coinbase account personal coins. Now, it is threatening in a day to eat the $19,500. I was duped a total of $35,000 by the two fraudsters. T                                                    t down within a few weeks of opening it.

IC3 logo

## Complaint Referral Form
## Internet Crime Complaint Center

**Thank you for submitting your complaint to the IC3. Please save or print a copy for your records. *This is the only time you will have to make a copy of your complaint.***

## Victim Information

|  |  |
|---|---|
| Name: | Reshma Kamath |
| Are you reporting on behalf of a business? | Yes |
| Business Name: | Reshma Kamath |
| Is the incident currently impacting business operations? | Yes |
| Age: | 30 - 39 |
| Address: | P.O. BOX 2792 |
| Address (continued): | |
| Suite/Apt./Mail Stop: | |
| City: | YUMA |
| County: | YUMA |
| Country: | United States of America |
| State: | Arizona |
| Zip Code/Route: | 85364 |
| Phone Number: | 6502570719 |
| Email Address: | reshmakamath2021@gmail.com |
| Business IT POC, if applicable: | |
| Other Business POC, if applicable: | |

## Financial Transaction(s)

|  |  |
|---|---|
| Transaction Type: | Check/Cashier's Check |
| If other, please specify: | |
| Transaction Amount: | $995000 |
| Transaction Date: | 02/10/2022 |
| Was the money sent? | No |

|  |  |
|---|---|
| Victim Bank Name: | RESHMA KAMATH |
| Victim Bank Address: | WELLS FARGO |
| Victim Bank Address (continued): | |
| Victim Bank Suite/Mail Stop: | |
| Victim Bank City: | |
| Victim Bank Country: | United States of America |
| Victim Bank State | Arizona |
| Victim Bank Zip Code/Route: | |
| Victim Name on Account: | RESHMA KAMATH |
| Victim Account Number: | 8162130366 |

|  |  |
|---|---|
| Recipient Bank Name: | |
| Recipient Bank Address: | |
| Recipient Bank Address (continued): | |
| Recipient Bank Suite/Mail Stop: | |
| Recipient Bank City: | |
| Recipient Bank Country: | [None] |
| Recipient Bank State | [None] |
| Recipient Bank Zip Code/Route: | |
| Recipient Name on Account: | |

Recipient Bank Routing Number:
Recipient Account Number:
Recipient Bank SWIFT Code:

---

## Description of Incident

Provide a description of the incident and how you were victimized. Provide information not captured elsewhere in this complaint form.

I'm a lawyer in California who practices civil litigation in my second year of practice. This person named Darryl Lemar Shepard pretended to be a client, signed retainer agreement, and then based on my request, sent copy of ID, and selfie with ID. For months, there was talks of some real-estate transaction deal between his partner and him.
account for the settlement of the property, and that as fees, I get a percentage. All the agreements signed. This person sent a $995K check part of some $9M property deal. He also stated there is some $36M skyscraper deal in Sacramento coming up. This check when deposited was flagged as "altered/fictitious." Before this, I called the issuer, and checked with the bank, there was alleged funds available, but the issuer could not confirm whether one of their clients sent this to me. After it got flagged, this person, Shepard stated it was some mistake, and it was a real check. I informed if so then they must wire or direct deposit a check directly into my account. They did in the amount of $48,500. They sent me an in-bank transaction receipt dated and time-stamped. This got posted for two days. Seeing it posted, and it was a genuine transaction, I was satisfied as the attorney. During this, they requested the money be sent to the partner, William G. Moore via bitcoin. I then had my personal Coinbase account to send them funds to the wallet addresses they provided. The amounts were $5,00; $5,000; $10,000; and $19,5000 adding to $35,000. Seeing the $48,500 was posted in my bank account per their check, I sent this. The check then turned out to be counterfeit and fraud within two days of posting. I called the lawyer, and law firm, on the face of the check, she called back, and stated she had not signed the check, and this kind of scam occurs all the time in real-estate transactions, and underwriting. Based on my request, my bank, Wells Fargo, initiated a stop-payment on all 4 payments to Coinbase. They also started a fraud investigation when I explained above to them. They gave a ach claim refund. However, Coinbase did not. They did not hold/stop/delay the transaction to prevent the fraudsters from getting the money in bitcoin. The fraudsters, got the money. Coinbase has eaten about $25,500 of my Coinbase account personal coins. Now, it is threatening in a day to eat the $19,500. I was duped a total of $35,000 by the two fraudsters. They also caused th                    down within a few weeks of opening it.

Which of the following were used in this incident? (Check all that apply.)
☐ Spoofed Email
☐ Similar Domain
☐ Email Intrusion
☑ Other        Please specify: E-MAIL, AND WHATSAPP, AND BITCOIN
                        WALLET ADDRESS

Law enforcement or regulatory agencies may desire copies of pertinent documents or other evidence regarding your complaint.

Originals should be retained for use by law enforcement agencies.

## Information About The Subject(s) Who Victimized You

Name: DARRYL LEMAR SHEPARD
Business Name: ARMSTRONG REAL ESTATE
Address: 6363 WALKER LANE, SUITE 130
Address (continued):
Suite/Apt./Mail Stop:
City: ALEXANDRIA
Country: United States of America
State: Virginia
Zip Code/Route: 22310
Phone Number: 5715745859
Email Address: mfreestonecapital@gmail.com
Website:
IP Address:

Name: William G Moore
Business Name: UNKNOWN
Address:
Address (continued): uknown
Suite/Apt./Mail Stop: uknown
City: uknown
Country: United States of America
State: [None]
Zip Code/Route: uknown
Phone Number:
Email Address: scase214@gmail.com
Website:
IP Address:

## Other Information

If an email was used in this incident, please provide a copy of the entire email including full email headers.

[No response provided]

Are there any other witnesses or victims to this incident?

[No response provided]

If you have reported this incident to other law enforcement or government agencies, please provide the name, phone number, email, date reported, report number, etc.

[No response provided]

☐ Check here if this an update to a previously filed complaint:

## Who Filed the Complaint

Were you the victim in the incident described above? Yes

## Digital Signature

By digitally signing this document, I affirm that the information I provided is true and accurate to the best of my knowledge. I understand that providing false information could make me subject to fine, imprisonment, or both. (Title 18, U.S. Code, Section 1001)

Digital Signature: Reshma Kamath

Thank you for submitting your complaint to the IC3. Please save or print a copy for your records. ***This is the only time you will have to make a copy of your complaint.***



Sincerely,

*Reshma Kamath*

Address:  P.O. Box 2792, Yuma, AZ 85366



**CONFIDENTIALITY NOTICE:** This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication. Thank you for your cooperation. To ensure compliance with Internal Revenue Service Circular 230, we inform you that any tax advice contained in this communication is not intended or written to be used, and cannot be used for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any tax-related matter(s) addressed herein.

---

📄 **IC3 Complaint Referral Form-DARRYL LEMAR-MOORE.pdf**
138K

 coinbase

| From ▾ | Any time ▾ | Has attachment | To ▾ | Is unread | Advanced search |

| | | |
|---|---|---|
| **me** | | **Email as record for Coinbase Fwd: PHP Development.......** - ---------- Forwarded message --------- From: Willia |
| me | Inbox | WF 2203040015150- CLAIM FOR COINBASE. - Sincerely, *Reshma Kamath* Reshma Kamath Counselor-at-La |
| Reshma .. Freestone 5 | Inbox | Fwd: Your BTC purchase is now available to trade ($19,500.00 USD) - From: Coinbase >>> Date: Thu, Mar 3, 2 |
| Reshma .. Freestone 3 | Inbox | Fwd: [NOTICE] A recent send has been delayed - From: Coinbase > Date: Thu, Mar 3, 2022, 2:08 PM > Subject |
| Reshma, me 2 | Inbox | Fwd: [NOTICE] A recent send has been delayed - From: Coinbase Date: Thu, Mar 3, 2022, 12:45 PM Subject: [N |
| Reshma, me 2 | Inbox | Fwd: Your BTC purchase is now available to trade ($10,000.00 USD) - From: Coinbase Date: Thu, Mar 3, 2022 |
| Reshma, me 2 | Inbox | Fwd: Your BTC purchase is now available to trade ($5,000.00 USD) - From: Coinbase Date: Thu, Mar 3, 2022, |
| Reshma, me 2 | Inbox | Fwd: [NOTICE] A recent send has been delayed - From: Coinbase Date: Thu, Mar 3, 2022, 11:25 AM Subject: [N |
| Reshma .. Freestone 3 | Inbox | Fwd: Your BTC purchase is now available to trade ($500.00 USD) - From: Coinbase > Date: Thu, Mar 3, 2022, |
| Reshma, me 2 | Inbox | Fwd: You sent 0.0113 BTC to 3Kv21ZfWByAQYzu6jmbbwVZv7jVr18Gn7C - From: Coinbase Date: Thu, Mar 3, 202 |
| | | |
| me | | A Coinbase user lost $11.6 million in under 10 minutes after falling for a fake-notification scam, the US Attorneys Offic |
| Coinbase | | Your Wells Fargo - EVERYDAY CHECKING was added to a Coinbase.com Account - Coinbase makes cryptocurrency e |
| no-reply | | Thank you for applying to Coinbase - apply to Coinbase. We'll be reviewing your application shortly and will reach ou |



coinbase

| From ▾ | Any time ▾ | Has attachment | To ▾ | Is unread | **Advanced search** |

Refresh    More

Inbox  The price schedule will start on May 22, 2023.66799835 of item - Dear Customer

estor in Coinbase Glob

Coinbase 2          New Device Confirmation - to your Coinbase account came from a device we don't reco

)23.85847891 of item - Dear (res

now.

other exchange accounts. It's a

La

Coinbase, me 56        Inbox  [Reply] Case #10620870 - Call for Coinbase Support from +16502570719 at 4/3/2

Coinbase Support        Inbox  [Reply] Case# 10677653 - Call for US Coinbase Support from +16502570719 at 8.

**Support - No Reply**      **Visit the Coinbase Help Center to contact support** - for contacting Coinbase. In an e

Coinbase, me 2         Funds recovery complete - Coinbase, This is a failure on your part. Watch this unfold in

Support - No Reply       Inbox  Visit the Coinbase Help Center to contact support - for contacting Coinbase. In a

Coinbase, me 2         Inbox  We will begin recovering funds on March 13, 2022 - investigation. Coinbase will b